COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Bumgardner and Senior Judge Overton
Argued at Richmond, Virginia


HOWARD C. WEIS

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1481-02-2              JUDGE NELSON T. OVERTON
                                                  OCTOBER 14, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
John Richard Alderman, Judge

Bruce P. Ganey for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Tried by the court sitting without a jury, Howard C. Weis (appellant) was convicted of attempting to obtain a prescription by fraud, forging a prescription, and uttering a forged prescription. See Code § 18.2-258.1. On appeal, appellant challenges the sufficiency of the evidence to support his convictions. We affirm the judgment of the trial court.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that appellant used the prescription drug oxycontin on a regular basis for chronic back pain. Normally, Dr. Patrick Woodward, or one of the other doctors in his practice, would prescribe appellant sixty oxycontin pills, a one-month supply.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Appellant was required to obtain a written prescription each month from Woodward's office and deliver it to Rite Aid pharmacy, where appellant normally filled his prescriptions.

On May 16, 2001, appellant presented a prescription for oxycontin at Rite Aid. The prescription, dated May 17, 2001, and signed by Woodward, was for a supply of 160 pills. Wendy Moody, the Rite Aid pharmacy technician who received the prescription, recorded on the top of the prescription the date of birth and telephone number of the individual who presented the prescription.[1] Moody later noticed that the prescription was post-dated, circled the date in red, and gave the prescription to Cindy Lam, a Rite Aid pharmacist. Moody also indicated to Lam that the quantity on the prescription looked unusual.

After checking appellant's prescription profile in the computer and verifying that appellant usually received only sixty oxycontin pills per month, Lam called Woodward to verify his order. Woodward could not recall the exact circumstances surrounding appellant's request for an oxycontin refill. However, Woodward verified that he wrote the prescription for appellant for sixty pills of oxycontin. At trial, Woodward produced a photocopy of the original prescription he wrote, demonstrating that the quantity was sixty, not 160. Although unfamiliar with the delivery of the prescription in question to appellant, Woodward testified that as a general rule in his practice, a prescription is placed in a sealed envelope and kept at the front desk for the patient to retrieve.

Following her discussion with Woodward, Lam wrote "do not fill" and "patient changed quantity" on the prescription. Appellant appeared at Rite Aid on May 18, 2001 and requested his prescription. Patricia Grubbs, the pharmacist on duty, advised appellant that the store could not fill the prescription and that he should call Woodward with any questions. Appellant stood and

---

[1] The date of birth and telephone number present on the prescription match indications of appellant's date of birth and telephone number in the trial court's records.

stared at Grubbs for several minutes, making her uncomfortable. A Hanover County deputy who had been alerted to the situation appeared at the store. Grubbs saw appellant turn in the direction of the officer, then leave the store at a "brisk walk."

Appellant testified the oxycontin prescription was in a sealed envelope when he received it at Woodward's office. According to appellant, he went from the doctor's office directly to the drive-in window of Rite Aid, opened the envelope, and gave the prescription to the attendant at the window. Appellant claimed he did not look at the prescription, nor did he alter it in any way.

The only issue on appeal is whether the Commonwealth proved beyond a reasonable doubt that it was appellant who changed the prescription quantity from sixty to 160. The trial judge accepted the Commonwealth's evidence, and rejected as incredible appellant's testimony that he did not alter the oxycontin prescription. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Appellant contends that the evidence did not exclude the possibility that the prescription was altered by someone either at Woodward's office or at Rite Aid pharmacy. However, Woodward wrote, and produced a photocopy of, the prescription for sixty tablets. Appellant admitted that the prescription was in a sealed envelope when he received it. Moreover, Moody testified that the prescription contained the number "160" when it was presented to her.

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "Circumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient

in itself, may lead a reasonable mind irresistibly to a conclusion.'"" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citations omitted).

The evidence demonstrated that the oxycontin prescription was altered after Woodward wrote it and before the pharmacy technician received it. By appellant's own testimony, the prescription was in a sealed envelope when he received it at the doctor's office. Only appellant possessed a reason to change the prescription to increase the quantity of drugs, which was accomplished simply by placing a "1" before the "60" Woodward had written.

Furthermore, when confronted with the news that the prescription would not be filled, appellant stared at the pharmacist in a way that made her uncomfortable. Appellant left the store quickly when the police arrived rather than questioning the pharmacist about the situation.

Considering all the facts and surrounding circumstances, the evidence was sufficient to prove beyond a reasonable doubt that appellant altered the oxycontin prescription and that he was guilty of the charged offenses. Appellant's convictions are affirmed.

Affirmed.